**HORNOR'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. HORNOR'S ESTATE.**

Nos. 7915, 7969.

Circuit Court of Appeals, Third Circuit.

Argued May 8, 1942.

Decided Aug. 21, 1942.

650

F. Raymond Wadlinger, of Philadelphia, Pa. (Foulkrod, Sheppard, Porter & Alexander, of Philadelphia, Pa., on the brief), for taxpayer.

Morton K. Rothschild, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for Commissioner.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

William MacPherson Hornor died on January 18, 1937, and his widow, Julia C. Hornor, the executrix of his estate, filed a federal estate tax return at Philadelphia. The decedent owned 107 parcels of real estate in and about Philadelphia. The greater part of these were acquired by him by devise from his mother. He purchased the rest. During the years 1925 to 1935, inclusive, he conveyed all of these properties to himself and his wife as tenants by the entirety. Julia C. Hornor made no contribution to the cost of these properties and paid nothing for the conveyances by entireties. On December 31, 1935, the decedent and his wife conveyed the properties to themselves and to Peter Townsend Hornor as trustees to manage the properties, invest and reinvest the proceeds thereof and to pay the net income "jointly" to the settlors for their joint lives and the life of the survivor. Upon the death of the survivor one-fourth of the net income from the trust was to be paid to each of four sons of the decedent and his wife for life, and, upon the death of the last survivor of the four sons, to distribute one-fourth of the corpus to the appointee of each son or to his descendants. The settlors, the decedent and his wife, reserved a joint power of revocation, modification or with-. drawal of all or any part of the trust estate during their joint lives; that is to say, during the lives of the decedent and his wife the trust or any part of it could be revoked and the corpus or any part.of it.

would revest in the settlors. Upon the death of either settlor the trust was to become irrevocable. At the time of the decedent's death the properties conveyed in trust had a value of $1,143,900.

At the time of the decedent's death the trustees also held checks amounting to $5,-181.70, turned over to them by the decedent and his wife, representing income from property owned by them as tenants by the entirety, to be held in trust under the trust indenture.

There was also a part of income (one-half less credits for payments) amounting to $33,673.46 in the trustees' hands awaiting distribution, derived from properties conveyed in trust by the decedent and his wife under the trust indenture and payable to the decedent and his wife jointly.

There was also one-half, or $333.80, of an amount on deposit with the Pennsylvania Company for Insurances on Lives and Granting Annuities to the credit of the decedent and his wife as tenants by the entirety, the balance consisting of deposits of income from the trust paid to the decedent and his wife jointly and deposited by them in this account.

There was also a part of a balance, or $823.56, on deposit with the Bryn Mawr National Bank to the credit of the decedent and his wife as tenants by the entirety, the balance consisting of deposits of rent from properties owned by the decedent and his wife as tenants by the entirety (not under the trust) amounting to $1,378.76, and interest on these deposits amounting to $268.35.

There was also a part of a balance, or $660.61 on deposit with Western Savings Fund Society to the credit of the decedent and his wife as tenants by the entirety consisting of rents from properties owned by the decedent and his wife as tenants by the entirety amounting to $400 and interest earned on the deposits amounting to $921.22.

There was also one-half of the value of a perpetual fire insurance policy, or $33.75, the policy having been paid for out of rents and profits from real estate (not within the trust) owned by the decedent and his wife as tenants by the entirety.

There was also a house and lot on Bryn Mawr Avenue, Bryn Mawr, Pennsylvania, valued at $55,000. This property originally belonged to the decedent. On November 21, 1921, he conveyed it to his wife. She remained the sole owner of it until Oc-.

tober 25, 1927 when she conveyed it to the decedent and herself as tenants by the entirety.

■ This seemingly complicated fact situation becomes clear upon examination. The first question presented for our determination is whether the value of the property held in trust following the execution of the indenture of December 31, 1935 should be included in the gross estate of the decedent. The Board of Tax Appeals upheld the contention of the Commissioner that the transfer by the decedent to the trust was made in contemplation of death; that therefore Section 302 (c) of the Revenue Act of 1926, c. 27, 44 Stat. 9, as amended by Section 803 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int. Rev.Code § 811(c), applies. The section as amended provides that any transfer of a material part of his property by a decedent " * * * in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without * * * [an adequate and full consideration in money or money's worth], shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title [subchapter]." The decedent was 76 years of age when he died. The statute is explicit and it was not shown that the transfer to the trust of December 31, 1935, was not made in contemplation of death, as provided by the statute. The conclusion of the Board, however, seems to us to disregard the fact that transfers of many of the properties subsequently subject to the trust were made by the decedent to himself and his wife as tenants by the entirety prior to the two year limitation imposed by Section 302(c). We think it unnecessary to discuss the question of whether or not any transfer by the decedent was made in contemplation of death, for the transfer to the trustees by the indenture of December 31, 1935, was squarely within the provisions of Section 302(e) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Code § 811(e) [1] and, therefore, the value of the properties held in trust following the transfer of 1935 was properly includible within the estate of the decedent.

■ As to the other items referred to in this opinion, beginning with the second, viz., checks for $5,181.70, turned over to the trustees by the decedent and his wife to be held in trust under the deed of December 31, 1935, and concluding with the last, the house and lot on Bryn Mawr Avenue, we sustain the decision of the Board, which included these items in the gross estate of the decedent. We will not discuss these items separately. All of them are includible within the gross estate of the decedent since every conveyance or transfer made by the decedent to his wife and himself by entireties with which we are here concerned was made without legal consideration moving from the wife. The provisions of Section 302(e) of the Act are applicable to these items.

■ One aspect of the case remains to be disposed of. After the trust was created and properties had been conveyed to it by the decedent and his wife as tenants by the entireties, gift taxes were paid in sums totalling $55,673.11. Of this total the decedent's estate paid $11,457.38 and the decedent's wife paid $44,215.73. Mrs. Hornor in making the estate tax return took as

---

[1] Section 302(e) of the Revenue Act of 1926 provides:

"To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants; * * *."

the credit provided by Section 801 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 640, the entire amount paid by her, viz., $44,215.73. The Commissioner disallowed the sum of $44,215.73 paid by the decedent's wife and thereby reduced the credit to the $11,457.38 which had been paid by the decedent's estate. We think that Section 801 of the Revenue Act of 1932, "Estate Tax Amendments", c. 209, 47 Stat. 278, entitles the estate of the decedent to the full credit of the sums paid both by the decedent and his wife as gift tax. This was the manifest intention of Congress as expressed in Section 801 and overrides the ordinary rule that a credit for a sum paid by way of tax can be availed of only by him who paid it.

The Board of Tax Appeals did not err in allowing the credit.

The decision of the Board is in all respects affirmed.